UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ENRICO DE LA PAZ, | No. 2:15-cv-00685 AC |
| Plaintiff, | |
| v. | ORDER |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | |
| Defendant. | |

Petitioner seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for supplemental security income ("SSI")[1] under Title XVI of the Social Security Act ("the Act"), 42 U.S.C. § 1381-1383f. For the reasons that follow, plaintiff's motion for summary judgment will be granted and defendant's cross-motion for summary judgment will be denied. The matter will be remanded to the Commissioner for further proceedings.

////

---

[1] SSI is paid to financially needy disabled persons. 42 U.S.C. § 1382(a); <u>Washington State Dept. of Social and Health Services v. Guardianship Estate of Keffeler</u>, 537 U.S. 371, 375 (2003) (Title XVI of the Act, § 1381 et seq., is the Supplemental Security Income (SSI) scheme of benefits for aged, blind, or disabled individuals, including children, whose income and assets fall below specified levels).

## I. PROCEDURAL BACKGROUND

Plaintiff initially applied for SSI on September 1, 2011, alleging his disability began on that date. Administrative Record ("AR")[2] at 13 (ECF No.11-3 at 14). The claim was initially denied on December 20, 2011, and on reconsideration on September 18, 2012. Id. Plaintiff then filed a request for hearing on October 18, 2012. 20 CFR 416.1429 et seq. Id. Administrative Law Judge ("ALJ") Nancy Lisewski presided over a hearing on May 12, 2014, attended by plaintiff's attorney and Impartial Vocational Expert ("IVE") Thomas G. Linvill, who testified. AR 31-32 (ECF No. 11-3 at 32-33). Plaintiff testified by telephone after waiving the notice of hearing. AR 13 (ECF No. 11-3 at 14).

On May 21, 2014 ALJ Lisewski found plaintiff "not disabled" and plaintiff requested review by the Appeals Council, AR 8 (ECF No. 11-3 at 9), which request was denied on January 28, 2015. AR 1 (ECF No. 11-3 at 2). The parties consented to the jurisdiction of the Magistrate Judge. ECF Nos. 9 (plaintiff) and 7 (defendant). The cross-motions for summary judgment, based upon the Administrative Record filed by the Commissioner, have been fully briefed. ECF Nos. 15, 16, 19.

## II. FACTUAL BACKGROUND

Plaintiff was born in 1976 and thus was under fifty years of age at all relevant times. ECF No. 15 at AR 20 (ECF No, 11-3 at 21). He has at least a high school education and can communicate in English. Id.

## III. LEGAL STANDARDS

The Commissioner's decision that a plaintiff is not disabled will be upheld "if it is supported by substantial evidence and if the Commissioner applied the correct legal standards." Howard ex rel. Wolff v Barnhart, 341 F.3d 1006, 1011 (9th Cir. 2003). "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive . . ." Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995) (quoting 42 U.S.C. § 406(g)).

---

[2] The Administrative Record, comprising 523 pages was filed in ten (10) parts and is found at ECF No. 11.

Substantial evidence is "'more than a mere scintilla [but] may be less than a preponderance.'" Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012). Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal quotations omitted). "While inferences from the record can constitute substantial evidence, only those 'reasonably drawn from the record' will suffice." Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006) (citation omitted). Although this court cannot substitute its discretion for that of the Commissioner, the court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioners] conclusion." Desrosiers v. Secretary of HHS, 846 F2d 573, 576 (9th Cir. 1988); Jones v. Heckler, 760 F.2d 993, 95 (9th Cir. 1985) ("The court must consider both evidence that supports and evidence that detracts from the ALJ's conclusion; it may not affirm simply by isolating a specific quantum of supporting evidence.")

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massnari, 253 F.3d 1152, 1156 (9th Cir. 2001). Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). However, the court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." Orn v. Astrue, 495 F3d 625, 630 (9th Cir. 2007); Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003) ("It was error for the district court to affirm the ALJ's credibility decision based on evidence that the ALJ did not discuss").

The court will not reverse the Commissioner's decision if it is based on harmless error, which exists only when it is "clear from the record that an 'ALJ's error was inconsequential to the ultimate nondisability determination.'" Robbins v. Social Security Administration, 466 F.3d 880, 885 (9th Cir. 2005) (quoting Stout v. Commissioner, 454 F.3d 1050-1056 (9th Cir. 2006)); see also Burch v. Barnhart, 400 F3d 676, 679 (9th Cir. 2005).

////

IV.     RELEVANT LAW

Disability Insurance Benefits and Supplemental Security Income are available for every individual who is "disabled." 42 U.S.C. §§ 423(d)(1)(A), 1382(a)(3)(A). The Commissioner uses a five-step sequential evaluation process to determine whether an applicant is disabled and entitled to benefits. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); Barnhart v. Thomas, 540 U.S. 20, 24-25 (2003) (setting forth the "five-step sequential evaluation process to determine disability" under Title II and Title XVI. The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.

20 C.F.R. §§ 404.1520(a)(4)(i), (b) and 416.920(a)(4)(i), (b).

> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, the claimant is not disabled.

Id., §§ 404.1520(a)(4)(ii), (c) and 416.920(a)(4)(ii), (c).

> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is disabled. If not, proceed to step four.

Id., §§ 404.1520(a)(4)(iii), (d) and 416.920(a)(4)(iii), (d).

> Step four: Does the claimant's residual functional capacity make him capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.

Id., §§ 404.1520(a)(4)(iv), (e), (f) and 416.920(a)(4)(iv), (e), (f).

> Step five: Does the claimant have the residual functional capacity perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Id., §§ 404.1520(a)(4)(v), (g) and 416.920(a)(4)(v), (g).

The plaintiff bears the burden of proof in the first four steps of the sequential evaluation process. 20 C.F.R § 404.1512(a) ("In general, you have to prove to us that you are blind or disabled"), 20 C.F.R. § 416.912(a) (same). However, "[a]t the fifth step of the sequential analysis, the burden shifts to the Commissioner to demonstrate that the plaintiff is not disabled

////

4

and can engage in work that exists in significant numbers in the national economy." Hill v. Astrue, 698 F.3d 1153, 1162 (9th Cir. 2012).

## V.   THE ALJ'S DECISION

The ALJ made the following findings:

> [Step One:]  The claimant has not engaged in substantial gainful activity since September 1, 2011, the application date (20 CFR 416.971 et seq.). […]
>
> [Step Two:]  The claimant has the following severe impairments: anxiety disorder NOS, depressive disorder NOS, and polysubstance abuse, most extensively with alcohol (20 CFR 416.920(c)). […]
>
> [Step Three:]  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 46.920(d), 416.925 and 416.926). […]
>
> [Step Four[3]:]  The claimant is unable to perform any past relevant work (20 C.F.R. 416.965). […]
>
> [Step Five:]  After careful consideration of the entire record, In find that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: he is limited to routine non-public work. […]
>
> [Step Five, continued:]  The claimant was born on August 9, 1976 and was 35 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).
>
> [Step Five, continued:]  The claimant has at least a high school education and is able to communicate in English (20 CFR 416.964).
>
> [Step Five, continued:]  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.  (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).
>
> [Step Five, continued:]  Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the plaintiff can perform (20 C.F.R. 416.969 and 4416.969(a)). […]

---

[3]  The ALJ made this finding out of order.  See AR 20 (ECF No. 11-3 at 21).  It is restored here to its logical place in the sequential analysis.

5

> The claimant has not been under a disability, as defined in the Social Security Act, since September 1, 2011, the date the application was filed. (20 C.F.R. § 416.920(g)).

AR 15-21 (ECF No. 11-3 at 16-22) (excerpted).

## VI.   ANALYSIS

Plaintiff alleges that the ALJ committed the following legal errors: (1) she improperly rejected the opinions of plaintiff's treating and examining doctors; (2) she improperly found plaintiff less than fully credible; and (3) she consequently assessed a Residual Functional Capacity which is not based on the evidence.

    A.    <u>The ALJ's Evaluation of Medical Opinion Evidence</u>

        1.    <u>Principles Governing Consideration Of Medical Opinion Evidence</u>

In the Ninth Circuit, courts "distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)." <u>Lester v. Chater</u>, 81 F.3d 821, 830 (9th Cir. 1995). Generally, more weight should be given to a treating physician's opinion than to those who do not treat the claimant, and more weight should be given to an examining physician's opinion that to those who do not examine the claimant. <u>Id.</u> at 830, 832-33.

The opinion of a claimant's treating physician is presumptively entitled to special weight:

> By rule, the Social Security Administration favors the opinion of a treating physician over non-treating physicians. <u>See</u> 20 C.F.R. § 404.1527. If a treating physician's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, [it will be given] controlling weight." <u>Id.</u> § 404.1527(d)(2).

<u>Orn v. Astrue</u>, 495 F.3d 625, 631 (9th Cir. 2007). Even where the treating doctor's opinion is not given controlling weight,

> "Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. 404.1527.... In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight."

<u>Orn</u>, 495 F.3d at 632 (quoting SSR 96-2p).

6

In addition, if the ALJ is not giving the treating doctor's opinion "controlling" weight:

> the determination or decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.

SSR 96-2p, available at 61 Fed. Reg. 34,490, 34,492 (July 2, 1996).[4]

Even where the treating doctor's opinion is contradicted by another doctor's opinion, the ALJ "may not reject this opinion without providing 'specific and legitimate reasons' supported by substantial evidence in the record for so doing." Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996) (as amended) (quoting Murray v. Heckler, 722 F.2d 499, 502 (9th Cir. 1983)). Those reasons must include a weighing of "all of the factors provided" in 20 C.F.R. §§ 404.1527(c) and 416.927(c), namely, length, nature and extent of the treatment relationship; supportability; consistency; and specialization. See Orn, 495 F.3d at 632.

### 2. The Medical Opinion Evidence Before The ALJ

#### a. Treating Psychiatrist Lisa Wang, M.D.

Dr. Wang had been plaintiff's treating psychiatrist for approximately four years at the time of the ALJ's hearing. The medical record before the ALJ contained Dr. Wang's treatment records from January 2010 through January 2014. AR 431-481, 497-523 (ECF No. 11-10 at 2-52, 68-94). At the hearing, plaintiff highlighted a Medical Source Statement from Dr. Wang (Exh. 2F) which is a Mental Impairment Questionnaire completed on August 26, 2011. The August 2011 statement noted that Dr. Wang was seeing plaintiff every two months. The assessment reflects a diagnosis of Anxiety Disorder NOS, being treated with Celexa and Welbutrin. This treatment regimen was complicated by plaintiff's sensitivity to the side effects of the drugs – restless legs, high anxiety, and akathisia. Dr. Wang assigned plaintiff a Global Assessment of Functioning (GAF) score of 40, which was also his highest score for the past

---

[4] Reproduced at https://federalregister.gov/a/96-16685 (last visited by the court on September 6, 2016).

year.[5] She assessed his prognosis as fair to poor. Id.

Dr. Wang identified the following signs and symptoms of mental impairment: anhedonia (pervasive loss of interest in almost all activities); decreased energy; thoughts of suicide; feelings of guilt of worthlessness; generalized persistent anxiety mood disturbance difficulty thinking or concentrating; psychomotor agitation or retardation; recurrent obsessions or compulsions which are a source of marked distress; perceptual or thinking disturbances; hallucinations or delusions; emotional lability; deeply ingrained, maladaptive patterns of behavior; and sleep disturbance. AR 345 (ECF No. 11-9 at 27). She found plaintiff to have moderate to marked functional limitations with regard to activities of daily living, deficiencies of concentration, and persistence of pace, and moderate limitations with regard to maintaining social functioning. She found repeated episodes of decompensation of at least two weeks duration within the last 12 month period. AR 346 (ECF No. 11-9 at 28).

Review of Dr. Wang's treatment notes for the following two-and-a-half years, AR 431-481, 497-523, reveals a history of fluctuating symptoms including panic attacks and suicidality, medication changes in relation to persistent problems with side-effects, and fluctuations in reported alcohol use.

The final assessment from Dr. Wang is a Psychiatric Assessment Annual Update dated January 29, 2014, AR 502-503 (ECF No. 11-10 at 73-74), which gives diagnoses of Anxiety Disorder NOS, Major Depression and ETOH abuse. Panic Disorder with Agoraphobia is also noted. Dr. Wang notes that plaintiff was experiencing panic attacks primarily when he leaves the house. Dr. Wang assessed a GAF score of 50. Id.

////

---

[5] The Ninth Circuit has defined a GAF score as a "rough estimate" of an individual's psychological, social and occupational functioning, used to reflect the individual's need for treatment. Garrison v. Colvin, 759 F.3d 995, 1003 n.4 (9th Cir. 2014) (quoting Vargas v. Lambert, 159 F.3d 1161, 1164 (9th Cir. 1998)). A GAF score of 41-50 describes "serious symptoms" or "any serious impairment in social, occupational or social functioning," while scores of 51-60 describe "moderate symptoms." Id. Because GAF scores "are typically assessed in controlled, clinical sets that may differ from work environments in important respects," they are not determinative of disability. However, they are "a useful measurement" of functioning. Id.

### b. Examining Psychologist C. Arpaci, Psy.D.

On August 16, 2012, Dr. Arpaci conducted a Mental Status Evaluation of plaintiff at the request of the Department of Social Services. AR 412-16 (ECF No. 11-9 at 94-98). The only medical record available to Dr. Arpaci was a 2-page progress note dated August 29, 2011. AR 412 (ECF No. 11-9 at 94). All information that he considered came from the claimant, who he considered to be a fair to poor historian. Id. The report does not indicate how much time Dr. Arpaci spent with plaintiff.

Dr. Arpaci's diagnostic impressions were as follows: Depression NOS, Generalized Anxiety Disorder (with diagnostic note to rule out Panic Disorder with Agoraphobia) on Axis I; borderline traits on Axis II; irritable bowel syndrome, chronic fatigue syndrome and allergies on Axis III; problems with occupation, finances, social environment on Axis IV; and a GAF score of 52 on Axis V.[6]  AR 415-416 (ECF No. 11-9 at 97-98). The prognosis was "fair to guarded." AR 415 (ECF No. 11-9 at 97).

Dr. Arpaci rated the plaintiff's work-related abilities as moderately to severely impaired in four (4) categories;[7] moderately impaired in two (2) categories;[8] mildly impaired in two (2) categories;[9] and unimpaired in one (1) category;[10] and found him able to manage his own funds. AR 416 (ECF No. 11-9 at 98).

### c. Non-Examining Psychologist Harvey Bilik, Psy.D.

Dr. Bilik conducted the mental health portion of the agency case review following Dr. Arpaci's consultative examination. AR 62-76 (ECF No. 11-4 at 13-27).[11] He considered Dr.

---

[6] It should be noted that this GAF is the highest one in the record.

[7] These categories are (1) ability to adapt to changes in job routine; (2) ability to withstand the stress of a routine day; (3) ability to interact appropriately with co-workers, supervisors, and the public on a regular basis; and (4) ability to adapt to changes, hazards, stressors in the workplace setting.

[8] These categories are (1) ability to maintain adequate pace or persistence to perform complex tasks and (2) ability to maintain adequate concentration and attention.

[9] These categories are (1) ability to follow complex/detailed instructions and (2) ability to maintain adequate pace or persistence to perform one or two step simple repetitive tasks.

[10] Plaintiff was found unimpaired in his ability to follow simple instructions.

[11] The ALJ's decision refers to Dr. Bilik as "the State agency psychological examiner," AR 19 (ECF No. 11-3 at 20), but Dr. Bilik did not examine plaintiff. Together with Dr. Pong (who (continued…)

Arpaci's findings, and disregarded Dr. Wang's findings because the "source opinion [addressed] an issue reserved to the Commissioner." AR 73 (ECF No. 11-4 at 24). Dr. Bilik rated plaintiff in nineteen (19) categories relevant to Residual Functional Capacity. He found that plaintiff was "moderately limited" in most categories and "not significantly limited" in six categories. AR 71-73 (ECF No. 11-4 at 22).

### 3. The ALJ's Findings

The ALJ rejected Dr. Wang's opinion because she found it "far too restrictive and not consistent with her own treatment notes of the claimant." AR 20 (ECF No. 11-3 at 21).[12] She gave the following supplemental reasons for disregarding Dr. Wang's opinion: (1) the opinion was issued in August 2011, prior to the alleged disability onset date, and therefore was not germane to the disability determination; (2) Dr. Wang's treatment notes following the opinion are inconsistent with the restrictive findings; (3) plaintiff's mental treatment was "intermittent and sparse in nature;" (4) plaintiff's "mental symptoms appear to improve and be well-controlled by psychotropic medications when he takes them and if he were to abstain from his polysubstance abuse." Id.

The ALJ based her RFC determination "for the most part" on the assessment of Dr. Bilik, "as supported by the findings and opinion of Dr. Arpaci," which she accorded "great weight" because consistent with the "preponderance of the longitudinal mental evidence of record as a whole." AR 19-20 (ECF No. 11-3 at 20-21).

### 4. Discussion

The ALJ's stated reasons for rejecting Dr. Wang's opinion are inadequate. The ALJ fails to identify with specificity any inconsistencies between Dr. Wang's restrictive findings and her treatment notes. An ALJ may only discount the opinion of a treating physician, even when that opinion is contradicted by another medical source,[13] by articulating "specific, legitimate reasons

---

addressed medical issues not relevant here), Dr. Bilik conducted the agency's internal file review. Dr. Arpaci conducted the only consultative examination for the agency.

[12] The ALJ purported to give Dr. Wang's opinion "little weight," id., but it is clear that she gave it no weight at all.

[13] Here the court assumes without deciding that Dr. Wang's opinion is "contradicted" by Dr. (continued…)

10

for doing so that are based on substantial evidence in the record." Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989). An ALJ satisfies the requirement for "substantial evidence" by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Garrison v. Colvin, 759 F.3d 995, 1012 (9th Cir. 2014) (quoting Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1996)). The ALJ failed to do so here. Moreover, her opinion fails to expressly weigh "all of the factors provided" in 20 C.F.R. §§ 404.1527(c) and 416.927(c), namely, length, nature and extent of the treatment relationship; supportability; consistency; and specialization. See Orn, 495 F.3d at 632. For these reasons alone, the ALJ's decision cannot stand.

The ALJ's other stated reasons are equally insufficient as a basis for discounting the opinion of a treating physician:

First, the August 2011 medical source statement was prepared less than a week prior to the alleged onset date, and thus was current on that date.

Second, Dr. Wang's treatment records from August 2011 through January 2014, shortly before the hearing before the ALJ, reflected continued severe symptoms that affected plaintiff's functioning. The ALJ fails to specifically identify what in those records is inconsistent with the earlier restrictive findings; the undersigned finds no inconsistency. The ALJ also fails to address the fact that the most recent of those records reported continuing panic attacks when plaintiff left his house, recent troublesome side-effects from medication, and a GAF that remained within the "serious impairment" range.[14]

////

---

Arpaci. Dr. Arpaci, as discussed above, found plaintiff to be "moderately/severely" limited in four work-related domains. His opinion thus appears closer to that of Dr. Wang than to that of Dr. Bilik, who found plaintiff to be no more than moderately limited in any area -- and whose opinion the ALJ accepted "as supported by" the findings and opinion of Dr. Arpaci. If Dr. Arpaci's opinion does not contradict Dr. Wang, then the ALJ was required to articulate "clear and convincing reasons" for rejecting Dr. Wang's opinion. See Lester, 81 F.3d at 830. Reasons that fail the "specific and legitimate" standard necessarily also fail the "clear and convincing" standard.

[14] See note 5, supra.

Third, the ALJ does not explain how periodic gaps in treatment affect the weight to be given to Dr. Wang's findings, especially in light of the length of the treatment relationship and how well Dr. Wang knew her patient as a result.

Fourth, periods of improvement are not inconsistent with findings that mental illness limits functioning. As the Ninth Circuit has repeatedly reminded the lower courts in the context of mental health issues:

> [I]t is error to reject a claimant's testimony [or treating physician opinion] merely because symptoms wax and wane in the course of treatment. Cycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working. See, e.g., Holohan v. Massanari, 246 F.3d 1195, 1205 (9th Cir. 2001) ("[The treating physician's] statements must be read in context of the overall diagnostic picture he draws. That a person who suffers from severe panic attacks, anxiety, and depression makes some improvement does not mean that the person's impairments no longer seriously affect her ability to function in a workplace. [fn. omitted.] Reports of "improvement" in the context of mental health issues must be interpreted with an understanding of the patient's overall well-being and the nature of her symptoms. See U, 528 F.3d at 1200-01 ("Nor are the references in [a doctor's] notes that Ryan's anxiety and depression were 'improving' sufficient to undermine the repeated diagnosis of those conditions, or [another doctor's] more detailed report."). They must also be interpreted with an awareness that improved functioning while being treated and while limiting environmental stressors does not always mean that a claimant can function effectively in a workplace. See, e.g., Hutsell, 259 F.3d at 712 ("We also believe that the Commissioner erroneously relied too heavily on indications in the medical record that Hutsell was 'doing well,' because doing well for the purposes of a treatment program has no necessary relation to a claimant's ability to work or to her work-related functional capacity.") [fn. omitted.]

Garrison, 759 F.3d at 1017. The ALJ disregarded these important principles when she stated that Dr. Wang's opinion deserved little weight in light of plaintiff's periodic improvements and responsiveness to medication.[15]

---

[15] The court further notes that although plaintiff did report periodic improvement in response to medication, he also frequently reported negative side-effects that required changes to his medication regime. That pattern does not support the ALJ's characterization of plaintiff's condition as "well-controlled by psychotropic medications," AR 20.

Finally, the ALJ relies on her own medically unsupported opinion that plaintiff's psychiatric condition would improve "if he were to abstain from his poly-substance abuse." AR 20 (ECF No. 11-3 at 21). Polysubstance abuse is *one of plaintiff's severe impairments*, AR 15 (ECF No. 11-3 at 16), not a condition that somehow renders his other impairments within his control. Moreover, the ALJ points to no medical finding that abstinence from alcohol would improve plaintiff's anxiety disorder or limit his panic attacks. There are certainly many treatment notes that indicate discussion of plaintiff's drinking, which makes sense as substance abuse is one of the disorders for which he was being treated. But the ALJ's assumption about the relationship between plaintiff's substance use and the severity of his other mental disorders is unsupported, and does not constitute an inference "reasonably drawn from the record." See Widmark, 454 F.3d at 1066.

For all these reasons, the ALJ erred in her consideration of Dr. Wang's opinions. Moreover, her adoption of the non-examining psychologist's conclusions is unsupported by substantial evidence. The ALJ states that Dr. Bilik's opinion, which found plaintiff unimpaired or only moderately impaired in each assessed area, was supported by the examination of Dr. Arpaci. But Dr. Arpaci, while not identifying as many severe limitations as had Dr. Wang, did find plaintiff moderately *to severely* impaired in several areas. The ALJ's error in this regard compounds her error regarding Dr. Wang.

B.   The ALJ's Credibility Determination

Plaintiff testified telephonically at the hearing, because he was in jail at the time. He stated inter alia that he was unable to work because his panic attacks made it difficult or impossible for him to leave the house. When he has a panic attack he has trouble walking, experiences tunnel vision, gets cold sweats, and feels like he is having a heart attack. Attacks last from five minutes to one hour, and can occur when he was at home as well as when he is in open places. He was experiencing panic attacks approximately once or twice a week at the time of his testimony, i.e. while incarcerated (and not able to drink).[16] AR 35-40 (ECF No. 11-3 at 36-41).

---

[16] If accepted as credible, this testimony casts further doubt on the ALJ's unsupported belief that (continued…)

The ALJ found the claimant's testimony regarding the severity of his symptoms to be "not generally credible." AR 20 (ECF No. 11-3 at 21). She based this finding on plaintiff's intermittent treatment record, missed appointments, and continued use of alcohol. The ALJ also found that plaintiff's ability to "enter into a new relationship" was inconsistent with his complaints of agoraphobia. Id.

In determining that a claimant's testimony is unreliable, an ALJ may consider, among other things, "(1) ordinary techniques of credibility evaluation such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." Smolen, 80 F.3d at 1283; see also Light v. Social Security Administration, 119 F.3d 789, 783 (9th Cir. 1997) (ALJ "must rely on reasons unrelated to subjective testimony (e.g. reputation for dishonesty), on conflicts between . . . testimony and . . . conduct, or on internal contractions in that testimony").

Here, plaintiff testified telephonically and the ALJ therefore did not have the opportunity to observe his demeanor. The ALJ identified no specific inconsistencies within plaintiff's testimony, or between his testimony regarding the severity of his symptoms and the medical record regarding his psychiatric condition. As previously noted, plaintiff's four year history of treatment with Dr. Wang cannot fairly be characterized as a "sparse" treatment record. Missed appointments, the waxing and waning of symptoms over time, and inconsistent compliance with medication, are all widely understood to be symptomatic of chronic mental illness. The ALJ does not explain how these common features, on the facts and circumstances of this case, detract from the credibility of plaintiff's testimony. Nor does she explain why a history of substance abuse relapses undermines credibility regarding the severity of other psychiatric symptoms. Finally, the ALJ offers no medical source for her assertion that claims of agoraphobia are necessarily inconsistent with having a personal relationship.

---

plaintiff's other psychiatric symptoms would be controlled by abstinence from alcohol and drugs.

14

The ALJ's grounds for finding plaintiff's testimony not credible are legally insufficient.

## VII.  REMAND

The errors identified above are not harmless.  Further development of the record is necessary to a determination of disability, however.  For example, the undersigned notes that the record before the ALJ did not include certain documents referenced in Dr. Wang's records, including a May 2013 "medical assessment of employability."  See AR 518 (ECF No. 11-10 at 89).  On remand, the ALJ should take care to exercise her "special duty" to fully and fairly develop the record by, inter alia, requesting further information from plaintiff's treating psychiatrist.  See Smolen, 80 F.3d at 1288.

## VIII.  CONCLUSION

For the reasons set forth above, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 15) is GRANTED;
2. The Commissioner's cross-motion for summary judgment (ECF No. 16) is DENIED;
3. This matter is REMANDED to the Commissioner for further proceedings consistent with this opinion; and
4. The Clerk of the Court shall enter judgment for plaintiff and close this case.

DATED: September 15, 2016

/s/ Allison Claire
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE